MYERS *v.* DRAGO GRAIN CO. ET AL.

[71 South. 874.]

EXECUTION. *Sales. Power to purchase.*

The fact that a sheriff sold the property at an execution sale, will not prevent him from afterwards purchasing the same property from the buyer at such sale, if there was no fraud, collusion or prearrangement between the sheriff and the purchaser in regard to the execution sale.

APPEAL from the chancery court of Perry county.

HON. C. G. MAYSON, Special Chancellor.

Suit by the Drago Grain Company and others against Walter Myers. From a decree for complainants, defendant appeals.

This is an appeal from the chancery court of Perry county, where the Drago Grain Company and others filed their bill against the appellant, Walter Myers, and obtained a decree granting the relief prayed for in the bill, from which decree this appeal is taken.

The Drago Grain Company, appellees here, complainants in the court below, filed their original bill in this cause in January, 1913, alleging that they were creditors of W. A. Mills with enrolled judgments against him; that Bush Grocery Company recovered a judgment against W. A. Mills and had same enrolled prior to their

judgments and caused an execution to be issued upon its judgment and sale of lot 4 in Richton, Miss., owned by W. A. Mills, to be made under execution, appellant, Walter Myers, being then sheriff; that at said sale, hereinafter denominated the first sale, Smith and Boyd became the purchasers of the property for three hundred and eighty dollars, an amount sufficient to pay the Bush judgment, the oldest judgment on the judgment roll. (They do not charge in their original bill nor in their amended bill that payment of the bid at said first sale was made, and the record shows that the bid was not paid.) They further charged in their original bill that by reason of said first sale and execution of the sheriff's deed to the property by appellant to Smith and Boyd, the Bush judgment was satisfied; that subsequently to the first sale and by collusive and fraudulent arrangements the judgment creditor, Bush Grocery Company, Myers, Mills and wife, and Smith and Boyd and Welch caused another execution to wrongfully issue upon the judgment of Bush Grocery Company, and caused a levy and sale to be made of all the property of W. A. Mills, including lot 4 sold under the first execution; that with intent to hinder, delay, and defraud creditors of Mills the said parties not only caused said second sale to be made, but executed necessary deeds to that end. And appellees charged, further, that deeds executed by Mills and wife to Myers were executed subject to a written agreement between Mills and wife and Meyers, whereby Myers was to reconvey the property to Mills and wife after payment by Mills and wife to Myers of money advanced by Myers to pay off Bush Grocery Company debt; that all of said parties were parties in the general scheme to hinder, delay, and defraud the creditors of the said W. A. Mills for the collection of their just and honest debts; that the second sale at which W. S. Welch became purchaser was null and void and passed no title because the judgment under which it was made was satisfied by the first sale, and that the deeds from Welch to

Myers, from Mills and wife to Myers, and from Smith and Boyd to Myers were all null and void and should be canceled, because tainted and inspired by fraud to assist Mills in cheating and defrauding his creditors. And appellees prayed that the court cancel and hold for naught the deed from Myers, sheriff, under the second execution sale to Welch, deed from Welch to Myers quitclaiming his interest, and deed from Mills and wife, M. E. Mills, to Myers, and written agreement between Myers and Mills and wife, and subject all the property to payment of appellee's debts. To this original bill Myers filed a demurrer.

An amended bill was filed in October, 1913. In this amended bill it is charged that in order to hinder, delay, and defeat the other judgment creditors of Mills, Mills and Myers entered into a fraudulent agreement whereby it was arranged that a new execution would be issued on the Bush judgment and all the Mills property, except his exempt property, and including lot 4, would be sold and bought in by some one and transferred later to Myers and later to Mills and wife; that the property was so sold to W. S. Welch and transfer made by Myers, as sheriff, in furtherance of the prearranged fraudulent scheme; that it was the ultimate purpose of the parties to get the property into the ownership of Mills and wife. The other allegations of the amended bill follow somewhat or adopt the allegations of the original bill.

The appellant demurred to this bill and filed an answer denying fraud, but later answered the amended bill, reserving the legal questions raised by his demurrer, and denying the allegations of the amended bill as to fraud and making his answer a cross-bill against Mills and wife and asserting absolute ownership of the property involved in the suit.

It indisputably appeared on the trial of the case that no arrangement between any of the parties interested had been made prior to the execution sale to Welch whereby Myers was to buy, or contemplated buying, the

property.   Likewise it appeared that the bid made by Welch and Boyd when the land was attempted to be sold at the first execution sale was never paid.   Welch, Smith, and Boyd were attorneys for Bush Grocery Company at the sale, and Boyd had Smith bid lot 4 in for two hundred and fifty-three dollars and forty-three cents, about the amount of the Bush judgment; but when they discovered that there was an outstanding incumbrance in favor of Mrs. M. E. Mills on the property, and that the title to the property was otherwise questionable and beclouded, Smith, Welch and Boyd failed or refused to pay their bid to Myers.   After much insistence on the part of all the parties, and with the consent of Mills, his wife, Mrs. M. E. Mills, Bush Grocery Company, Welch, Smith and Boyd, and after having been advised by several lawyers that he was authorized to do so by law, Myers agreed to undertake to resell the property originally sold, along with the other property in controversy.   An execution issued and a levy was made, and after due advertisement the property was struck off and sold to W. S. Welch.   Up to the time of the second sale, Myers was not interested one way or the other, except to discharge his duties as sheriff.   This second execution sale was regular; and, furthermore, it chanced to be made at an opportune time to attract bidders.   No complaint is made in the pleadings about this second sale, other than that the Bush judgment under which it was made had been satisfied by the first sale, and that the second sale was a part of an alleged fraudulent scheme to defraud the other creditors of Mills.

In his answer and cross-bill Myers shows purchase of the property in question from Welch, after the second execution sale for five hundred and forty-seven dollars, but with the understanding that Mills and wife and Smith and Boyd quitclaim any interest they might have, and the further understanding that Mrs. Mills cancel her trust deed on the property.   He further shows the written contract entered into by himself and Mills and

wife whereby he gave to the latter a written option to
repurchase the property under the conditions specified
in the contract. It appears from the evidence that this
agreement was had after the second execution sale, and
after Myers had conferred with a lawyer as to the
legality of his purchasing the property under the cir-
cumstances and the sort of agreement which would pro-
tect him.

The chancellor expressly found that the first execu-
tion sale was abortive and void, because the bid at the
sale was not paid to the sheriff, and all parties con-
sented to a resale; that Myers was guilty of no fraud,
and that there was no intentional or actual fraud in
Myers' transactions with Mills and wife, and that Myers
was not guilty of any intent to injure or defraud the
creditors of W. A. Mills and M. E. Mills before or at
the time when he took the deed from M. E. Mills, and
when he executed the contract in evidence. He further
found that a large portion of the property sold under
the second execution sale was, at the time of the exe-
cution sale thereof and at the time of the execution of
the contract to repurchase, exempt from levy or sale
under execution, and that the second execution sale was
valid and binding, but that on account of the fact that
Myers was sheriff of the county when the said execution
sales were made, he was not in a position to make any
profit out of the purchase of the property. The chan-
cellor further found that the contract of repurchase was
a mortgage and secured Myers for the money expended
by him, and that Mills and wife having not elected to
claim the exempt property as freed from liability for
their debts, as they had a right to do, but having per-
mitted a decree *pro confesso* to be entered against them,
and the exempt property being of sufficient value to reim-
burse Myers for the money he had paid out, that Myers
was entitled to the exempt property. The court there-
fore ordered the unexempt property sold for the benefit
of appellees and decreed that the exempt property

should go to Myers without the formality of a judicial sale thereof, and authorized the necessary proceedings to place Myers in possession of the exempt property.

It is thus seen that the chancellor has settled most of the questions of fact controverted in the pleadings.

*Stevens & Cook,* for appellant.

*T. C. Hannah, Jno. T. Haney, E. C. Fishel* and *Q. S. Heidelberg,* for appellees.

Holden, J., delivered the opinion of the court.

(After stating the facts as above). It appears from the record here that this controversy has narrowed down to one question, which deserves our consideration, and that is, whether or not the sale of the property in question by W. S. Welch and W. A. Mills and wife to the appellant, Walter Myers, was a legal and valid sale. If this sale was valid, then the controversy must be settled in favor of the appellant here; but if it was a void sale then the decree of the chancellor may be correct. We here quote the finding of the chancellor in his decree on this subject:

". . . And finding further that the execution sale made of the property in question on the 4th day of September, 1911, to W. S. Welch was, at the time it was made, valid and binding, but finding further that the said Walter Myers, on account of the fact that he was sheriff of the county when the said execution sales were made, was not in position to make any profit out of the purchase of the said property from W. A. Mills and wife in the manner in which the same was consummated and evidenced by the deed of W. A. Mills and M. E. Mills to him and by the contract executed simultaneously therewith; and finding that the said deed to Walter Myers and the said contract between him and the said W. A. Mills and M E. Mills constitute a mortgage and security to

Walter Myers for the repayment of the money expended by him; and finding that the full measure of the relief to which the said Walter Myers as against complainants is entitled is indemnity for the amount of money expended by him at the time of his contract with W. A. and M. E. Mills,'' etc.

It will be observed in the finding of the chancellor that the sale from Welch and Mills and wife to appelant, Walter Myers, was decreed to be void ''on account of the fact that he was sheriff of the county when the said execution sale was made;'' that is to say, that because the appellant, Myers, acting as sheriff of the county, sold the property under execution to the said W. S. Welch, and then some time afterwards purchased the same property from the said Welch, the sale by Welch to appellant was void. In plain language, the chancellor held that on account of the appellant having previously sold the property under execution while sheriff, that he could not legally purchase the said property individually at any time thereafter. The record in this case shows that the complainant in the court below failed to prove any collusion, fraud, or deception on the part of (Sheriff) Myers, appellant, and Welch and Mills and wife; and the chancellor in his decree specially finds that there was no collusion, fraud, or deception on the part of the appellant, nor did appellant have any understanding or agreement whatever regarding the purchase of the property before or at the time of the execution sale made by him as sheriff. The chancellor also found that the sale made by the sheriff to the said Welch of the property here involved was a valid sale; and, in fact, the chancellor found in his decree that there was no fraud, collusion, or prearrangement by appellant with any person connected with the sale or purchase of the property; but he decreed in effect that the appellant, Myers, could not legally purchase the title to the property from the said W. S. Welch and Mills and wife because the appellant had sold the property to

the said Welch under a writ of execution prior to that
time while acting in his official capacity as sheriff.  The
evidence in this record and the decree of the of the
chancellor showing that the appellant was entirely free
from fraud or collusion, or even the suspicion of it,
in making the sale as sheriff, and in afterwards pur-
chasing the property as an individual, leads us to con-
clude that the chancellor erred in holding that the appel-
lant, Myers, did not obtain a legal and valid title to the
property here involved.  The contention of appellee,
which was sustained by the chancellor, that the appel-
lant, Walter Myers, was legally incapable of individu-
ally purchasing this property from Welch and Mills and
wife, because he (appellant) had previously sold it as
sheriff under the writ of execution, is untenable; and
as we see nothing in this record that vitiates the title
of appellant to the property in question, we hold that
his title is legal and valid.  Therefore the decree of the
lower court is reversed and a decree entered here for
the appellant.

Reversed, and judgment here for appellant.

*Reversed.*